Kevin SHEPARD, Plaintiff,

v.

**WAPELLO COUNTY, IOWA and Wapello County Sheriff Donald Kirkendall, Defendants.**

No. CIV.4–02–CV–10260.

United States District Court,
S.D. Iowa,
Central Division.

March 4, 2003.

Paige E. Fiedler, Beth A. Townsend, Fiedler & Townsend PLC, Johnston, IA, for Plaintiff.

Mark W. Thomas, Grefe & Sidney PLC, Des Moines, IA, for Defendants.

## ORDER

LONGSTAFF, Chief Judge.

BEFORE THE COURT is defendants' motion for summary judgment. Plaintiff has resisted the motion and it is now fully submitted.

## I. BACKGROUND

The following facts either are not in dispute or are viewed in a light most favorable to plaintiff. Plaintiff began work for defendant Wapello County, Iowa as a correctional officer on November 25, 1997. During the course of plaintiff's tenure with defendant, plaintiff received two promotions, rising to the rank of assistant jail administrator. He was never formally disciplined for misconduct, and remained an at-will employee at all times during his employment.

While serving as assistant jail administrator, plaintiff's direct supervisor was Jail Administrator Sam Craven. Craven in turn reported to Sheriff Donald Kirkendall, a named defendant in the present action.

In May 2001, plaintiff was approached by Kevin Mineart, another corrections officer, who informed plaintiff about a trip taken by Craven and Corrections Officer Katie Leinhauser for purposes of extraditing inmate Patricia McKim from Tucson, Arizona to Ottumwa, Iowa. Mineart informed plaintiff that Leinhauser observed Craven commit several illegal acts during the course of the extradition. Plaintiff told Mineart that if McKim wanted to tell him about the trip in question, she would either need to speak directly with plaintiff, or describe the events in writing.

Several days later, Shawn Smithhart, another sheriff's agent, also contacted

plaintiff. During the course of the conversation, Smithhart outlined the details of the three-day extradition of McKim, including the alleged illegal activities of Craven. Smithhart claimed to have obtained the details directly from McKim.

Included among the facts relayed by Meinhart and Smithhart were the following:

   a. that Craven let McKim move about freely on the Amtrak train throughout the three-day journey without handcuffs, shackles or supervision;
   b. that Craven repeatedly purchased and allowed McKim to drink alcoholic beverages throughout the journey;
   c. that Craven drank alcoholic beverages himself during the trip, often to the point of intoxication;
   d. that Craven abused prescription medication to the point of impairment during the extradition trip;
   e. that Craven accompanied McKim to several bars in Chicago;
   f. that Craven allowed McKim to spend the night alone, unsupervised, in her own hotel room in downtown Chicago; and
   g. failed to get McKim medical attention when she became ill from excessive drugs and alcohol.

After his conversation with plaintiff, Smithhart told McKim how to contact plaintiff.

A few days later, McKim called plaintiff and asked to meet. Plaintiff met with McKim on May 13, 2001. McKim confirmed and reiterated Mineart's and Smithhart's accounts of the three-day trip from Tucson to Ottumwa.

McKim then mentioned her meeting with plaintiff to her neighbor, Judd Letts. Letts told Craven about the meeting, who in turn contacted Sheriff Kirkendall and complained that an "investigation" was being conducted behind his back. When Kirkendall asked whether McKim's account of the extradition trip had any merit, Craven admitted to allowing McKim to travel without restraints during the Amtrak train trip, but denied all other allegations of illegal conduct.

Meanwhile, plaintiff attempted to determine how best to approach Sheriff Kirkendall with his information. Plaintiff had little time for contemplation, however. On May 15, 2001, Kirkendall, having already learned of the situation through Craven himself, summoned plaintiff to his office. During the meeting, Kirkendall told plaintiff not to continue his inquiry into McKim's extradition. Plaintiff took no further action after this date.

On July 1, 2001, Kirkendall again called plaintiff to his office, where Deputy Mark Miller also was present. Kirkendall told plaintiff he must resign or face termination. Plaintiff asked why he was being terminated and was told it was the "Patricia McKim thing." Kirkendall stated that he didn't think the events described by McKim ever occurred and that plaintiff had "coerced" McKim into making a statement. Plaintiff responded that this wasn't true but that in any event, he had stopped his investigation. Kirkendall then brought up several unrelated criticisms of plaintiff's performance that had never been communicated to plaintiff in the past. He told plaintiff that if he chose not to resign and was terminated, he would be ineligible for unemployment benefits. Plaintiff subsequently resigned.

Plaintiff filed the present action in this Court on June 3, 2002. Count I alleges defendants wrongfully discharged plaintiff in violation of recognized Iowa public policy. Count II alleges defendants violated Iowa Code § 70A.29, which prohibits an employer from discharging, disciplining or failing to hire an individual "as a reprisal

for a disclosure of any information by that employee to" certain public officials. Iowa Code § 70A.29. Count III sets forth a cause of action under 42 U.S.C. § 1983, alleging the defendants unlawfully retaliated against plaintiff for exercising his First Amendment rights. Count IV alleges a parallel cause of action under § 1983 against Sheriff Kirkendall in his individual capacity. Defendants now move for summary judgment on counts I, III and IV of plaintiff's complaint.

## II. APPLICABLE LAW AND DISCUSSION

### A. Governing Law

Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Walsh v. United States*, 31 F.3d 696, 698 (8th Cir.1994). The moving party must establish its right to judgment with such clarity that there is no room for controversy. *Jewson v. Mayo Clinic*, 691 F.2d 405, 408 (8th Cir.1982). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### B. Wrongful Discharge in Violation of Public Policy (Count I)

Under Iowa law, an employer generally may discharge an at-will employee at any time for any reason. *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 219 (Iowa 1996); *Borschel v. City of Perry*, 512 N.W.2d 565, 566 (Iowa 1994). The Iowa Supreme Court has recognized two exceptions to this rule: (1) if the discharge violates a "well-recognized and defined public policy of the state;" and (2) if a contract has been created by an employee handbook or manual, and the contract is somehow breached. *Borschel*, 512 N.W.2d at 566 (quoting *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560 (Iowa 1988)). The public policy exception is at issue in the present case.

■ To recover damages under the public policy exception to the employment at-will doctrine, "a plaintiff must establish (1) engagement in a protected activity, (2) adverse employment action, and (3) a causal connection between the two." *Teachout v. Forest City Community School Dist.*, 584 N.W.2d 296, 299 (1998). In the present case, defendants do not dispute that plaintiff's "resignation" was in fact a "termination," or adverse employment action.[1] Rather, defendants contend plaintiff is unable to establish that his investigation of Craven constituted protected activity, and/or a causal link between plaintiff's termination and his engagement in protected activity.

■ To evaluate whether plaintiff engaged in a protected activity, the Court must first determine whether plaintiff has identified a "well-recognized and defined public policy of the state." *Borschel*, 512 N.W.2d at 566. This is a legal question to be decided by the Court. *See, e.g., Kempfer v. Automated Finishing, Inc.*, 211

---

**1.** In paragraph 17 of their Statement of Material Facts Not in Dispute, defendants concede Sheriff Kirkendall requested that plaintiff resign.

Wis.2d 100, 564 N.W.2d 692, 695 (1997). For purposes of this determination, the Iowa Supreme Court has recognized that: "There need not be an express statutory mandate of protection before an employee's conduct is shielded from adverse employment action." *Teachout,* 584 N.W.2d at 300. As a practical matter, however, public policy "expressed in the constitution and the statutes of the state" may be relied upon for finding an exception to the employment at-will doctrine. *Borschel,* 512 N.W.2d at 567.

In the present case, plaintiff contends his forced resignation violated state public policy encouraging or, in some instances, *requiring,* the reporting of criminal acts. Specifically, he contends Craven's conduct while transporting McKim violated the following Iowa Code sections:

a. Iowa Code § 719(3), prohibiting the knowing conveyance of contraband, including alcoholic beverages and controlled substances, to an inmate;

b. Iowa Code § 719(8), prohibiting the furnishing of alcoholic beverages or controlled substances to an inmate;

c. Iowa Code § 721.2(4), prohibiting the use of one's public office to require another to do something in excess of one's authority, or requiring another to do an unlawful act;

d. Iowa Code § 721.2(6), prohibiting public employee from failing to perform duty required by law;

e. Iowa Code § 719.5, prohibiting any public officer from permitting, aiding or abetting the escape of an inmate;

f. Iowa Code § 904.320, regulating private transportation of prisoners;

g. Iowa Code § 356.2, requiring sheriffs to receive and keep county prisoners until discharged by law;

h. Iowa Code § 356.50, requiring compliance with standards for private transportation of prisoners promulgated by the American Corrections Association;

i. Iowa Code § 70A.29, prohibiting retaliation against public employees for disclosing information that the employee reasonably believes violates a law or rule, or constitutes an abuse of funds, abuse of authority, or a danger to public safety;

j. 201 IAC § 50.13(2), requiring 24–hour supervision of all inmates and that inmates must be able to be observed at all times; and

k. 201 IAC 50.15(6), requiring jail personnel to provide qualified medical attention to inmates who are obviously injured or ill.

Complaint at ¶ 33. Although many of the above statutes are likely irrelevant to the present matter, there is evidence in the record sufficient to have caused plaintiff to believe Craven violated Iowa Code §§ 719(3) and 719(8). Clearly, Iowa public policy encourages an employee to report suspected criminal activity to the appropriate authority, and, in fact, *protects* public employees from retaliation for reporting such criminal activity, abuse of authority or similar infractions. *See* § 70A.29(1) (rendering it unlawful to take adverse employment action against public employee "as a reprisal for a disclosure of any information by that employee" regarding another employee's "violation of law or rule, mismanagement, a gross abuse of funds, an abuse of authority, or a substantial and specific danger to public health or safety"). In fact, plaintiff may have been *legally obligated* to report the allegations to Sheriff Kirkendall. *See* IOWA CODE § 719.7(4)(B) ("A person who possesses contraband or fails to report an offense of possessing contraband" as set forth under § 719.7 commits a class "D" felony).

Based on the language set forth in Iowa Code §§ 70A.29 and 719.7(4), the Court finds Iowa public policy not only encourages, but arguably *requires* public employees to report the type of conduct described to plaintiff by Mineart, Smithhart and McKim. The crucial issue then becomes whether a causal link exists between plaintiff's reporting of and investigation into Craven's alleged conduct and plaintiff's termination.

■ As explained in *Teachout,* Iowa courts have adopted a stringent standard with regard to causation in common-law wrongful discharge cases, requiring that the engagement in protected conduct is the "determinative" factor in the adverse employment action. *Teachout,* 584 N.W.2d at 301. "A factor is determinative if it is the reason that 'tips the scales decisively one way or the other,' even if it is not the predominant reason behind the employer's decision." *Id.* at 302 (quoting *Smith v. Smithway Motor Xpress, Inc.,* 464 N.W.2d 682, 686 (Iowa 1990)). Whether a factor is "determinative" is a fact issue.

Viewing the evidence in the light most favorable to plaintiff, the record shows plaintiff was warned by Kirkendall, the decisionmaker, on at least one occasion to "drop" his investigation into the extradition trip. Deposition of Kevin Shepard ("Shepard Dep.") at 57, Plaintiff's App. at 44. During the July 1, 2001 meeting, when plaintiff asked why he was being pressured to resign, Kirkendall replied: "Number one, this Patricia McKim thing." Shepard Dep. at 73, Plaintiff's App. at 46; Deposition of Donald C. Kirkendall ("Kirkendall Dep.") at 97, Plaintiff's App. at 28. Furthermore, Sheriff Kirkendall expressly admitted in his written summary of his July 1, 2001 meeting with plaintiff that the "McKim incident" was the first "area of dissatisfaction" discussed with plaintiff.

Exh. 1 to Shepard Dep., Plaintiff's App. at 34.

Based on the above statements, the Court finds plaintiff has created a material issue of fact as to whether his investigation into and reporting of the McKim extradition trip was a determinative factor in Sheriff's Kirkendall's decision to terminate him. Even assuming other issues weighed into the decision, such as plaintiff's so-called "profane and belligerent attitude," it is for the jury to determine whether the McKim incident in fact "tipped the scale" in Kirkendall's decision. *Teachout,* 584 N.W.2d at 302 (quoting *Smith,* 464 N.W.2d at 686). Defendants' motion for summary judgment is denied with regard to count I of plaintiff's complaint.

**C. Violation of Iowa Code § 70A.29 (Count II)**

■ Section 70A.29(1) of the Iowa Code provides as follows:

1. A person shall not discharge an employee from or take or fail to take action regarding an employee's appointment or proposed appointment to, promotion or proposed promotion to, or any advantage in, a position in employment by a political subdivision of this state as a reprisal for a disclosure of any information by that employee to a member or employee of the general assembly, or an official of that political subdivision or a state official or for a disclosure of information to any other public official or law enforcement agency if the employee reasonably believes the information evidences a violation of law or rule, mismanagement, a gross abuse of funds, an abuse of authority, or a substantial and specific danger to public health or safety. This section does not apply if the disclo-

sure of the information is prohibited by statute.

Iowa Code § 70A.29(1). Subsection (3) further provides that subsection 1 "may be enforced through a civil action... by an aggrieved employee." *Id.* § 70A.29(3).

Because this Court previously has found that plaintiff reasonably believed Sam Craven may have violated state law during his transport of McKim, and that a material issue of fact existed as to whether defendants terminated plaintiff for investigating and/or reporting Craven's conduct, summary judgment must be denied with regard to count II.[2]

### D. Violation of 42 U.S.C. § 1983 (Counts III and IV)

Count III of plaintiff's complaint alleges plaintiff was discharged for exercising his First Amendment rights, in violation of 42 U.S.C. § 1983.[3] Complaint at ¶¶ 44–46. Count IV seeks to hold defendant Kirkendall liable for a § 1983 violation in his individual capacity.

As summarized by the Eighth Circuit in *Hudson v. Norris*, 227 F.3d 1047, 1050 (8th Cir.2000), to establish a *prima facie* case of unlawful retaliation by a public employer for exercising First Amendment rights, an employee must demonstrate: "that he or she participated in a protected activity, that the employer took an adverse employment action against him or her, and that a causal connection existed between the protected activity and the adverse employment action." *See also Jones v. Fitz-*

*gerald*, 285 F.3d 705, 713 (8th Cir.2002).[4] The first and third elements are at issue in the present case.

### 1. Whether Plaintiff Engaged in Protected Activity

■ The framework for determining whether a public employee's speech warrants First Amendment protection was summarized by the Eighth Circuit in *Shands v. City of Kennett*, 993 F.2d 1337, 1342 (8th Cir.1993):

> Whether a public employee's speech is protected by the First Amendment requires a two-step judicial inquiry. The first issue is whether the employee's speech can be "fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Bausworth v. Hazelwood Sch. Dist.*, 986 F.2d 1197, 1198 (8th Cir.1993). If the speech addresses a matter of public concern, the court must balance the "interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Both of these questions are questions of law for the court. *Connick*, 461 U.S. at 148 n. 7, 103 S.Ct. 1684.

Any underlying factual disputes concerning whether the plaintiff's speech is

---

**2.** Although defendants have not expressly moved for summary judgment on count II, it appears from defendants' memorandum that they seek to dispose of plaintiff's entire complaint.

**3.** In defendants' memorandum, defendants appear to have misinterpreted plaintiff's § 1983 claim as based on a denial of due process and/or property rights, rather than a First Amendment claim.

**4.** Assuming a plaintiff establishes his *prima facie* case, "the burden shifts to the employer to articulate a non-discriminatory reason for the adverse employment action." *Hudson*, 227 F.3d at 1050. The employee may then show that the articulated reason is pretextual. *Id.*

protected, however, should be submitted to the jury through special interrogatories or special verdict forms. *Roberts v. Van Buren Pub. Schs.*, 773 F.2d 949, 954–55 (8th Cir.1985); *Bennis v. Gable*, 823 F.2d 723, 729 n. 6 (3d Cir.1987). For example, the jury should decide factual questions such as the nature and substance of the plaintiff's speech activity, *Bennis*, 823 F.2d at 729, and whether the speech created disharmony in the workplace, *McGee v. South Pemiscot School District R–V*, 712 F.2d 339, 342 (8th Cir.1983). The trial court should then combine the jury's factual findings with its legal conclusions in determining whether the plaintiff's speech is protected. *Lewis v. Harrison Sch. Dist. No. 1*, 805 F.2d 310, 315 (8th Cir.1986); *Roberts*, 773 F.2d at 955.

In the present case, plaintiff bases his § 1983 First Amendment claim on two areas of speech: 1) his report to Sheriff Kirkendall regarding the alleged illegal conduct of Jail Administrator Craven; and 2) his complaints to County Board of Supervisor Jerry Parker regarding plaintiff's concerns about the cutting of overtime hours. Complaint at ¶¶ 45–46. The Court finds as a matter of law that both of these issues, alleged criminal conduct on the part of a county employee, and alleged mismanagement of county funds, address matters of public concern. *Shands*, 993 F.2d at 1342 (citing *Connick*, 461 U.S. at 146, 103 S.Ct. 1684).

■ The second prong of the *Connick* and *Pickering* analysis, balancing the employee's interest in free speech against the State's interest in maintaining an orderly workplace, turns on underlying factual issues that must be resolved by the factfinder. *Id.* For example, it is for the jury to decide whether plaintiff's conduct in performing his own investigation into Craven's alleged conduct so upset the operation of the Sheriff's office as to outweigh

plaintiff's right to free speech. Likewise, the jury will also be called upon to balance plaintiff's First Amendment rights against the alleged rude and disruptive manner in which he reported his concerns to Council Member Parker. *See* Deposition of Jerry Parker at 15, attached to Defendants' Statement of Material Facts Not in Dispute.

2. Whether Plaintiff's Speech was Causally Linked to his Termination

■ "If any speech is found protected under the above analysis, the plaintiff must show that the protected speech was a substantial, or motivating factor in the defendant[s'] decision to discharge him." *Shands*, 993 F.2d at 1343 (internal citation omitted). Proof on this issue, obviously, will overlap with the evidence submitted on plaintiff's common law wrongful discharge claim. If plaintiff is able to meet his burden, "the burden shifts to the defendant to show by a preponderance of the evidence that the plaintiff would have been discharged regardless of the protected speech activity. These two causation questions are questions of fact for the jury." *Id.* (internal citations omitted).

As set forth above, plaintiff has produced sufficient evidence to create a material issue of fact as to whether his investigation of the McKim extradition was a "substantial, or motivating factor" in Kirkendall's decision to discharge him. *Id.* It is for the jury to determine whether Kirkendall's decision was nevertheless justified.

3. Whether County or Kirkendall may be Held Liable

■ Defendants have not addressed whether defendant Kirkendall may be held individually liable on plaintiff's § 1983 claim. An individual supervisor may be held individually liable under § 1983 if, among other acts, he failed to adequately

investigate an unconstitutional act, or "directly participates in a constitutional violation . . . ." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir.1996). Based on the evidence cited with regard to parts II(D)(1)—(2) above, the Court finds plaintiff has created a material issue of fact as to whether defendant Kirkendall directly participated in the violation of plaintiff's First Amendment rights by allegedly terminating plaintiff for engaging in protected conduct.

■ With regard to the County's liability,[5] the United States Supreme Court has held that: "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents" based on respondeat superior. *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus far in the proceedings, plaintiff has failed to point to conduct on the part of the County demonstrating custom or practice regarding the inhibition of free speech, or a "prior pattern of unconstitutional conduct that is so 'persistent and widespread' as to have the effect and force of law." *Andrews*, 98 F.3d at 1075. There likewise is no allegation that the County failed to adequately hire or train its employees. *See id.* (local government may be held liable under § 1983 if plaintiff establishes that its training and/or hiring practices "were inadequate and likely to result in a violation of constitutional rights").

Because defendants have not addressed this issue in their motion papers, the Court will not enter judgment at this juncture on the County's § 1983 liability as a matter of law. Nevertheless, because of the apparent lack of evidence to support this claim, plaintiff is urged to reevaluate this count prior to submitting his pre-trial materials. Summary judgment is denied with regard to counts III and IV of plaintiff's complaint.

## III. CONCLUSION

Based on the foregoing, defendants' motion for summary judgment is DENIED on all counts.

**IT IS SO ORDERED.**

---

**5.** The Court need not address separately whether Sheriff Kirkendall may be held liable under count III in his official capacity. "A suit against a county official in his official capacity is the equivalent of a suit against the county itself." *Doe v. Washington Cty.*, 150 F.3d 920, 923 (8th Cir.1998). In essence, naming the County and Sheriff Kirkendall in his official capacity under count III is duplicative. *Id.*